## Susan M. Crawford v. William H. Osmun.

*Mortgage—Bill to redeem—Conveyances held to operate as a mortgage—Fraud—Public policy.*

1. The question involved in this case is whether an assignment of a land contract and subsequent quitclaim deed of the land to defendant, by complainant, were intended as a mortgage or an absolute sale, and the Court find in favor of the mortgage theory and complainant's right to redeem.

2. It has not generally been held that a mortgagee can get rid of a mortgage redemption by setting up that he and the mortgagor have made false representations to third parties.

3. There are some illegal transactions where a party may defend on grounds of public policy, although acting unfairly. But while falsehood and deception are moral delinquencies, they are not usually, as between the parties using them, any answer to each other's claims.

Appeal from Shiawassee. (Newton, J.) Argued May 16 and 17, 1888. Decided June 8, 1888.

Bill to redeem. Complainant appeals. Decree reversed, and complainant held entitled to redeem, and an accounting ordered. The facts are stated in the opinion.

*E. D. Kinne* and *Turner & Turner* (*F. A. Baker,* of counsel), for complainant.

*Baldwin, Draper & Jacokes,* for defendant, contended:

1. Conceding complainant's theory to be true, Osmun became vested with both the legal and equitable title to the land, subject only to be divested by the creditors of the Crawfords; citing How. Stat. § 5569.

2. If any trust arose, it was an express one by parol agreement, which was in contravention of the deed, and which cannot be presumed to have been valid; citing *Brown v. Bronson*, 35 Mich. 418; *Fisher v. Fobes*, 22 Id. 454; *Taylor v. Boardman*, 24 Id. 304; *Weare v. Linnell*, 29 Id. 227; *Tyler v. Peatt*, 30 Id. 64.

*G. R. Lyon,* for defendant, contended :

1. To overcome the effect of a deed, and to turn it into a mortgage,
   the evidence must be clear, convincing, and entirely satisfactory;
   citing *Case v. Peters,* 20 Mich. 298; *Tilden v. Streeter,* 45 Id. 533,
   540; *McMillan v. Bissell,* 63 Id. 66.

CAMPBELL, J.   Complainant filed her bill in the circuit
court for the county of Shiawassee, in chancery, to redeem
and have an accounting under a transaction which she insists
amounted to a mortgage.

In July, 1878, she held a land contract from one Lyman
E. Woodard on lot 8, in block 22, in Owosso, upon which
there remained unpaid, including a previous mortgage to one
Kilpatrick, about $4,650.   She had at that time laid out a
considerable sum in building three brick stores, which had
not been entirely finished in the upper stories, but which
were ready for occupancy, and partly occupied, below.
Amos Gould, of Owosso, had a claim against complainant's
husband, and was attempting to reach this property of com-
plainant to satisfy it, and complainant had no means to
conduct her defense.   Thereupon she claims that she assigned
the land contract to defendant, who was to pay up Woodard,
and get the title in his own name, and furnish the means to
defend the Gould suit, and retain the title as security for his
repayment.   She further claims that in August, 1881, Osmun
wished to remove the decree, which had then been rendered
in Gould's favor, to the Supreme Court, and represented to
complainant that, in order to enable him to appeal in his own
name, it was desirable to have her quitclaim to him, which
she did ; and it was then agreed she should have six years to
repay defendant his advances, including $350 then paid her
as a further advance.

Defendant denies that the transaction was by way of mort-
gage, but claims that he knew nothing about the Gould liti-
gation at that time, and that complainant made an out and

out sale to him, and he was to pay her back $2,500, $500 down, and $2,000 out of the contemplated sale of one of the stores ; that in 1881 he purchased the remaining interest of complainant, which included only so much of the $2,000 as had not been already paid, either to her or to meet the Gould claim and legal expenses ; that he paid Gould $750, and paid counsel several hundred dollars.

The court below dismissed the bill on account of the unsatisfactory condition of the testimony, which is very conflicting. If the case depended entirely on the testimony of the interested witnesses, we should do the same thing, for the conflict is very extensive. But we think that circumstances, as well as the testimony of outside witnesses, leave no serious doubt on the main features of the case, although not satisfactory upon some of the details. It is quite manifest that, in order to meet the Gould case, the parties went through some ceremonies which they supposed important to make out defendant, as against it, to have been a *bona fide* purchaser. This was not a very edifying performance; but it is hardly sufficient to make out an estoppel against complainant, who has had little to do with the management of her own affairs, and who, we think, cannot be held to as strict a responsibility as she might otherwise be on that account. Furthermore, it has not generally been held that a mortgagee can get rid of a mortgage redemption by setting up that he and the mortgagor have made false representations to third persons. There are some illegal transactions where a party may defend on grounds of public policy, although acting unfairly. But, while falsehood and deception are moral delinquencies, they are not usually, as between the parties using them, any answer to each other's claims.

We are entirely convinced that, when complainant assigned to defendant, the latter knew of the Gould litigation, and the assignment was made to enable complainant to more effectually resist it. And we are also satisfied that, for some-

time after the assignment, it was evident from the conduct of the parties that the property was regarded as Mrs. Crawford's. If defendant's claim were true, there is no satisfactory way of accounting for this fact. And if what defendant claims is true, there was no definite claim on her $2,000 for expenses and outlays on the Gould claim. While defendant's testimony indicates that he relied on this as sufficient to protect him after he heard of the Gould litigation, it is impossible to doubt that he knew of it all the time. The complainant's theory of the transaction as a security is made out to our satisfaction by the general effect of the proofs.

If this is so, his story of the purpose of the quitclaim deed is not maintainable. If defendant really held the property as his own, he merely owed complainant a certain amount of money, whether chargeable or not with any counter-claims. He held the legal title to the land, and she held no interest in it whatever, either of record or otherwise. Her receipt in full was the only kind of voucher appropriate to the case. She had nothing to quitclaim. Apart from the testimony of complainant and her family that the quitclaim was made on the defendant's representation that he was advised it would enable him to appeal more effectually, it appears from the testimony of Judge Harriman, of Ann Arbor, an entirely disinterested witness, that the parties came to see him on the subject, and Osmun so represented.

Osmun does not testify or claim that this deed was made to release any equity of redemption. He denies that there was any mortgage to redeem. If such was not its purpose, it can only be treated as intended to facilitate the defense on settlement of the Gould claim. And as Gould thereupon did settle his claim for less than 40 cents on the dollar, and must have done so on the idea that defendant's title was one with which he would have some difficulty in dealing, it is not unlikely it was of some use in the arrangement.

The mortgage being made out, and the equity of redemp-

tion not released, complainant is entitled to an accounting. In taking the account, we think that. defendant, in addition to the payment of the Woodard contract and Kilpatrick mortgage, has shown payment to Gould, and counsel fees to Judge Baldwin in that litigation, which came within the mortgage. There is also proof of $850 paid complainant. We do not think the other alleged payment of $500 is made out. The record does not show very clearly any other authorized payment for complainant. There is some testimony about a Sturgis claim, that may be examined on the accounting. As it stands, it is not clear that it was a debt of complainant.

The defendant is entitled to 7 per cent. interest on his advances and lawful payments under the mortgage, and must account for rents and profits. He will also be entitled to taxes and necessary expenses to keep up the property. We have nothing before us on this subject, and those various items will, when shown, be governed by the equitable rules governing such cases.

Complainant is entitled to a decree reversing the decree below, and declaring that she is entitled to redeem, and ordering an accounting to ascertain the amount remaining due defendant; so that, when the account is finally adjusted, there may be a final decree for redemption or sale, in accordance with the rights of the parties. In taking the accounting, the defendant will be allowed such items as we have referred to. The remaining items, whatever they may be, will be established by proper testimony, unless agreed to.

Complainant will recover costs of both courts.

The other Justices concurred.